IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-1626

LISA LEIGHTON,

    Plaintiff,

v.

NEWREZ LLC d/b/a SHELLPONT MORTGAGE SERVICING,

    Defendant.

---

COMPLAINT WITH JURY TRIAL DEMANDED

---

## INTRODUCTION

1. This action arises out of Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

## JURISDICTION

2. Jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the conduct at issue occurred in this District, Plaintiff owns a home in this District, and Defendant conducts business in this District.

## PARTIES

4. Plaintiff Lisa Leighton (hereinafter "Plaintiff") is a natural person who owns a home in the County of La Plata, State of Colorado, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5. Defendant, NewRez LLC, d/b/a Shellpoint Mortgage Servicing (hereinafter "Defendant"), is a national loan servicing company doing business in Colorado and is licensed to do business in the State of California and regularly conducts business in said State; has a principal place of business located at 55 Beattie Place, Suite 500, MS-501, Greenville, South Carolina 29601; is a "person" as defined in 15 U.S.C. § 1681a(b); and a "furnisher" of consumer information pursuant to 15 U.S.C. § 1681s-2(b).

## PURPOSE OF THE FAIR CREDIT REPORTING ACT

6. Consumer credit plays a major role in the lives of American consumers entering into the American marketplace and the economic system in general. Fair and accurate credit reporting acts as a gatekeeper to credit purchases, employment and income, basic commercial services, insurance coverage, housing rentals, and a broad range of other transactions.  Robert J. Hobbs & Stephen Gardner, THE PRACTICE OF CONSUMER LAW 39-40 (2nd ed. 2006).

7. Congress investigated and determined that the banking system is dependent upon fair and accurate reporting, that inaccurate credit reports directly impair

2

the efficiency of the banking system, and that unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. 15 U.S.C. § 1681(a)(1).

8. The FCRA was created to "ensure fair and accurate credit reporting, promote efficiency, and protect consumer privacy." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 52 (2007).

9. The FCRA was proposed in 1968 as an amendment to the original Truth in Lending Act. Senator Proxmire (D-WI) announced his intention to create legislation addressing the growing frequency of cases in which a consumer "is unjustly denied because of *faults or incomplete information in a credit report*," and entered an initial draft of what would eventually become the FCRA into the Congressional Record. Anthony Rodriguez et al., FAIR CREDIT REPORTING 8 (5th ed. 2002) (citing 114 Cong. Rec. 24904 (Aug. 2, 1968)) (emphasis added).

10. Senator Proxmire listed five types of abuses requiring Congressional response, including biased or one-sided information and incomplete information. Anthony Rodriguez et al., FAIR CREDIT REPORTING 8 (5th ed. 2002) (citing 115 Cong. Rec. 2411 (Jan. 31, 1969)).

11. Congress considered inaccurate and misleading information to be the most serious problem. Anthony Rodriguez et al., FAIR CREDIT REPORTING 10 (5th ed. 2002).

12. The FCRA applies to situations in which information relevant to a consumer's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" is collected. Anthony Rodriguez et al., FAIR CREDIT REPORTING 5 (5th ed. 2002) (citing 15 U.S.C. § 1681a(d)).

13. An inaccurate or misleading credit report can not only significantly and unfairly lower a consumer's credit worthiness, but can also prevent consumers from full access to the American marketplace and negatively impact a consumer's living standard and general reputation on the whole if a consumer's character and mode of living is not accurately portrayed. Congress enacted the FCRA to prevent this arbitrary and iniquitous result.

14. Furthermore, in 1996, Congress, in an effort to increase the "accuracy and integrity" of information supplied to credit reporting agencies, added 15 U.S.C. § 1681s-2 to the FCRA by passing the Consumer Credit Reform Act. The provision, "[r]esponsibilities of furnishers of information to consumer reporting agencies," subjected data furnishers, who were not previously covered by the FCRA, to requirements related to accuracy and the handling

4

of consumer disputes. These provisions were originally scheduled to sunset in 2003, but were considered important enough to Congress to be made permanent in the Fair and Accurate Credit Transactions Act of 2003. Federal Trade Commission Staff: 40 Years of Experience with the Fair Credit Reporting Act, pp. 1, 2, 92. Retrieved from the FTC website: http://www.ftc.gov/os/2011/07/110720fcrareport.pdf.

15. The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

16. Consumer reporting agencies Equifax, Experian, Trans Union, and Innovis have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows data furnishers to create and respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

17. That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II." It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

18. Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will

ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

19. Metro II codes are used on an industry wide form known within the credit industry as an Automated Credit Dispute Verification ("ACDV") electronic form.

20. The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

21. These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

## **FACTUAL ALLEGATIONS**

22. In August of 2019, Plaintiff incurred a financial obligation with Defendant. The line of credit was assigned the account number 579117743.

23. In March of 2020, Congress passed the CARES Act, which gave homeowners such as Plaintiff the right to request 180 days of mortgage payment forbearance on their loans. Plaintiff requested and received forbearance from Defendant, so they did not need to make mortgage payments starting in April 2020.

24. In or about March 2020, Plaintiff submitted the necessary paperwork with Defendant and was approved for a forbearance on the account for the months of March 2020 through June 2020.

25. Starting on or around April 13, 2020, Plaintiff attempted to contact Defendant via phone and email numerous times to confirm the deferment.

26. On May 19, 2020, Terrance Bennett, a loss mitigation specialist for Defendant, emailed Plaintiff, stating that "[y]ou have been approved for a 3-month forbearance starting 4/3 – 6/1 with your next due date being 7/1."

27. Defendant later agreed to extend Plaintiff's forbearance through September 30, 2020.

28. Plaintiff's forbearance is an "accommodation" under 15 U.S.C. § 1681s-2(a)(1)(F)(i)(I).

29. On November 17, 2020, Plaintiff viewed her Equifax Information Services LLC ("Equifax") credit report and learned that Defendant was reporting her debt as over 120 days past due, with the date of first delinquency listed as May 1, 2020.

30. On November 24, 2020, Plaintiff mailed a dispute letter to Equifax, which stated:

> *There is a serious error on my credit reports that must be corrected as it is causing me problems on obtaining credit to refinance my current residence and is negatively affecting my current creditworthiness.*
>
> *The trade line referencing a loan with Shellpoint Mortgage Servicing, account number 057117743 is inaccurate. Shellpoint Mortgage Servicing was aware of and agreed to a forbearance regarding the months of March through September 2020. All payments were made in accordance with the forbearance agreement between the parties. There is a 120-day late reference in July of 2020, which is inaccurate. As such, I am requesting the trade line referencing Shellpoint Mortgage Servicing, account number 0579117743, be updated to accurately report the tradeline.*
>
> *If you have any further questions or are in need of additional documentation, please do not hesitate to contact me."*

31. Thereafter, upon information and belief, Equifax forwarded Plaintiff's dispute information to Defendant for investigation as required by 15 U.S.C. § 1681(a)(2).

**EQUIFAX'S RESPONSES TO PLAINTIFF'S
DECEMBER 2020 DISPUTE**

32. Equifax sent an ACDV to Defendant regarding account number 0579117743.

33. Defendant verified for Equifax that account number 0579117743 belonged to Plaintiff and was accurately reporting on her credit report.

8

34. However, Defendant incorrectly confirmed for Equifax that the account was 120 days past due in July of 2020—including a $10,841 past due balance—in violation of 15 U.S.C. § 1681s-2(b).

35. By furnishing inaccurate information regarding Plaintiff to Equifax after Plaintiff had notified Defendant of the inaccuracy, Defendant also violated 15 U.S.C. § 1681s-2(a)(1)(B).

36. The 2020 amendment to the Fair Credit Reporting Act, which was effective starting March 27, 2020, provides:

> if a furnisher makes an accommodation with respect to 1 or more payments on a credit obligation or account of a consumer, and the consumer makes the payments or is not required to make 1 or more payments pursuant to the accommodation, the furnisher shall--
>
> **(I)** report the credit obligation or account as current; or
>
> **(II)** if the credit obligation or account was delinquent before the accommodation--
>
> > **(aa)** maintain the delinquent status during the period in which the accommodation is in effect; and
> >
> > **(bb)** if the consumer brings the credit obligation or account current during the period described in item (aa), report the credit obligation or account as current.

15 U.S.C. § 1681s-2(a)(1)(F)(ii).

37. Because Plaintiff and Defendant had agreed to an accommodation, and Plaintiff was not required to make payments in April through September of 2020—and was not delinquent prior to those months—Defendant was required to report the account as current during those months. Because Defendant failed to do so, Defendant violated 15 U.S.C. § 1681s-2(a)(1)(F)(ii).

## DAMAGES

38. Defendant's reporting adversely affected Plaintiff's credit profile.

39. On January 14, 2021, because of Defendant's erroneous reporting, Plaintiff was unable to refinance her residences.

40. On January 14, 2021, Plaintiff attempted to refinance her home mortgages related to properties located in California and Colorado. To determine credit worthiness, ACC Mortgage Lending obtained Plaintiff's credit reports.

41. On January 15, 2021, ACC Mortgage Lending confirmed with Plaintiff in writing that due to a misreporting of a 90-day late by Defendant, that it would be, "next to impossible to refinance either home at this time."

42. ACC Mortgage Lending confirmed in writing that if the inaccurate credit reporting by Defendant were corrected, that Plaintiff would be able to refinance both properties with a rate of 4.125% (30 Year Fixed). Since

      Plaintiff's loan rates are at a 6% range, the interest saved on her residence in California would be approximately $39,000 per year and the interest saved on Plaintiff's home in Colorado would be roughly $9,000 per year.

43. In addition, because of Defendant's inaccurate reporting to the credit reporting agencies, Plaintiff has suffered reduced credit, emotional distress in the form of headaches, sleeplessness, and depression constituting actual damages pursuant to 15 U.S.C. § 1681o(a)(1) and § 1681n.

44. Plaintiff is entitled to attorney's fees and costs from Defendant pursuant to 15 U.S.C. § 1681o(a)(2) and § 1681n.

## RESPONDEAT SUPERIOR LIABILITY

45. The acts and omissions of employees and other agents of Defendant who communicated with Plaintiff and/or with the CRAs were committed within the time and space limits of their agency relationship with their principal, Defendant.

46. The acts and omissions by these agents were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant.

47. By committing these acts and omissions against Plaintiff, these agents were motivated to benefit their principal, Defendant.

11

48. Defendant is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of federal law by its agents, including but not limited to violations of the FCRA.

## STANDING

49. Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

    a. a valid injury in fact;

    b. which is traceable to the conduct of Defendant;

    c. and is likely to be redressed by a favorable judicial decision.

*See Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016), and *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).

50. In order to meet the standard laid out in *Spokeo* and *Lujan*, Plaintiff must clearly allege facts demonstrating all three prongs above.

### *The "Injury in Fact" Prong*

51. Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo. Id.*

52. For an injury to be "concrete" it must be a *de facto* injury, meaning that it actually exists. In the present case, Defendant's actions negatively impacted

Plaintiff's credit, causing her to be unable to refinance either her primary residence or her second home.

53. For an injury to be "particularized" means that the injury must "affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548. In the instant case, Plaintiff personally suffered worse credit which negatively impacted her ability to refinance her primary residence or second home, and emotional distress.

*The "Traceable to the Conduct of Defendant" Prong*

54. The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that Plaintiff's injury is traceable to the conduct of Defendant.

55. In the instant case, this prong is met simply by the facts that the violative conduct contemplated in this Complaint was initiated by Defendant directly, or by Defendant's agent at the direction of Defendant.

*The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong*

56. The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

57. In the present case, Plaintiff's Prayers for Relief include a request for statutory and actual damages. The damages were set by Congress and specifically redress the financial damages suffered by Plaintiff.

58. Furthermore, the award of monetary damages redress the injuries of the past, and prevent further injury by Defendant in the future for example the lost opportunity and out of pocket loss related to her inability to refinance both of her residential properties.

59. Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), Plaintiff has standing to sue Defendant on the stated claims.

## TRIAL BY JURY

60. Plaintiff is entitled to and hereby demands a trial by jury. U.S. Const. amend. VII; Fed. R. Civ. P. 38.

## CAUSE OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT –

## 15 U.S.C. § 1681 *et seq*.

61. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

62. Defendant violated 15 U.S.C. § 1681s-2(a)(1)(B) by failing to update and/or remove the inaccurate tradeline in response to Plaintiff's disputes.

63. Defendant violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation in response to Plaintiff's disputes, failing to review all relevant information available to it and documentation provided by Plaintiff, and failing to update and/or remove the inaccurate tradeline.

64. Because Plaintiff and Defendant had agreed to an accommodation, and Plaintiff was not required to make payments in April through September of 2020—and was not delinquent prior to those months—Defendant was required to report the account as current during those months. Because Defendant failed to do so, Defendant violated 15 U.S.C. § 1681s-2(a)(1)(F)(ii).

65. As a result of Defendant's violations of the FCRA, Plaintiff has suffered actual damages not limited to detriment to her credit rating, inability to refinance her home, emotional distress, frustration, and embarrassment in an amount to be determined at trial.

66. Defendant's conduct, actions, and inactions were willful, rendering it liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

67. Alternatively, Defendant's violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

68. Plaintiff is entitled to recover actual damages, statutory damages, and costs and attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant for:

- an award of actual and statutory damages against Defendant for its violations of the FCRA pursuant to 15 U.S.C. §§ 1681n and 1681o;

- an award of punitive damages against Defendant for its willful noncompliance with the FCRA pursuant to 15 U.S.C. § 1681n;

- an award of costs and attorney's fees against Defendant pursuant to 15 U.S.C. §§ 1681n and 1681o; and

- such other and further relief as the Court may deem just and proper.

Dated: June 15, 2021                    Respectfully submitted,

By: s/Thomas J. Lyons, Jr.

Thomas J. Lyons, Jr., Esq.
MN Attorney I.D. #: 249646
**CONSUMER JUSTICE CENTER, P.A.**
367 Commerce Court
Vadnais Heights, MN 55127
Telephone: (651) 770-9707

Facsimile:  (651) 704-0907
tommycjc@ConsumerJusticeCenter.com

Mark L. Vavreck, Esq.
MN Attorney I.D. #: 0318619
**GONKO & VAVRECK PLLC**
Designers Guild Building
401 North Third Street, Suite 640
Minneapolis, MN 55401
Telephone:  (612) 659-9500
mvavreck@cgmvlaw.com
(*pro hac vice application forthcoming*)

***ATTORNEYS FOR PLAINTIFF***

## DECLARATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF

I, Lisa Leighton, declare under penalty of perjury, as provided for by the laws of the United States, 28 U.S.C. § 1746, that the following statements are true and correct:

1. I am the Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information, and belief, formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass Defendants, cause unnecessary delay to Defendants, or create a needless increase in the cost of litigation to Defendants named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

Date:  June 10, 2021                               s/Lisa Leighton
                                                   Lisa Leighton
                                                   152 MacFire Tree Lane
                                                   Durango, CO  81301